HALL, Judge.
Plaintiff, an attorney, sues on quantum meruit for fees due him for professional services rendered defendant. From a judgment for plaintiff for $1,000.00, plus interest and costs, defendant has appealed.
The testimony clearly shows that plaintiff’s services were worth even more than the $1,000.00 charged defendant. Defend *462 ant contends, however, that plaintiff’s services were rendered to defendant’s president, Albert F. Lusch personally, hence he, and not the defendant, is liable therefor.
Defendant is a corporation engaged in the business of selling insulation and kindred materials with offices in New Orleans. Following defendant’s organization, Owens-Corning Fiberglas Corporation, of Toledo, Ohio, defendant’s principal supplier of materials, advanced to it the sum of $278,833.-84, for which it took defendant’s corporate note, payable “upon demand”, with a written stipulation that the maker agrees to pay yearly, towards reduction of the note, 75'% of its annual net profits for the preceding year, with a guaranteed minimum of $1,-000.00 per month, payable in advance throughout each such preceding year; and further the maker agreed to permit Owens-Corning to audit its books and make such arrangements for keeping such books as Owens-Corning might require. The note was guaranteed by the personal endorsement of Mr. Lusch and Mr. Merwin, the principal officers and sole stockholders of defendant.
Owens-Corning caused the employment by defendant of a Mr. J. C. Schute, a business consultant, who gave advice and suggestions to defendant, checked and audited its books, and made monthly reports to Owens-Corning concerning defendant’s affairs.
In September 1959, Owens-Corning, having become dissatisfied with the way defendant’s business was being conducted, threatened to call the note, which had then been reduced to approximately $230,000.00. Defendant’s very existence was thus threatened because it was impossible to pay the note in full. Mr. Lusch, defendant’s president and general manager, sought plaintiff’s advice as to whether the note was demand-able. Plaintiff advised Mr. Lusch that, in his opinion, the corporation could successfully defend a suit on the note. However, being then informed by Mr. Lusch that Owens-Corning was further threatening to cut off defendant’s credit for supplies, and to establish another outlet in New Orleans, plaintiff further advised defendant regarding unfair trade practices, with a view of filing a counter-claim to any suit on the note.
Defendant’s management finally concluded that, although it might successfully defend a suit by Owens-Corning the corporation would be destroyed pending the outcome of the litigation by reason of losing its line of credit with its chief supplier.
About this time a Mr. Waters and a Mr. Taylor became interested in taking over the defendant by purchase of all of its capital stock, 60% of which was held by Mr. Lusch and 40% by Mr. Merwin. Their plan had the approval of Owens-Corning which apparently was trying to force a change in defendant’s corporate management. Mr. Schute, the business consultant, undertook to represent Messrs. Waters and Taylor in the matter of the stock purchase.
Mr. Schute, representing the purchasers, worked out an agreement with Messrs. Lusch and Merwin relative to the price and terms of the stock sale. Plaintiff had no part in their discussions until the morning of September 25th when Mr. Lusch, Mr. Merwin and Mr. Schute arrived at plaintiff’s office with a stock sales agreement already prepared and asked plaintiff to look it over and advise them. They remained closeted with plaintiff the entire day and the transaction was finally consummated. Part of the consideration paid by Waters and Taylor for the stock was the release of the personal endorsements of Lusch and Merwin on the note.
Defendant contends that Mr. Lusch first consulted plaintiff, not on behalf of the defendant corporation, but on his own personal behalf as an endorser on the note, and that thereafter plaintiff continued to represent Mr. Lusch personally in the sale of his stock.
We do not consider it necessary to review the testimony in detail. The testi *463 mony leaves no doubt in our minds that Mr. Lusch consulted plaintiff as president and general manager of the defendant, and on its behalf, and that every professional service which plaintiff rendered, at least up to September 25th, was rendered to the defendant, and not to Mr. Lusch personally.
.The testimony relative to the services rendered by plaintiff on September 25th is not conclusive one way or the other. The district judge was of the opinion that all of these services were rendered to the defendant. In our opinion they were probably rendered in part to defendant and in part to Mr. Lusch personally.
Be that as it may, we are of the opinion that the services rendered by plaintiff to the defendant, exclusive of the services rendered on September 25th, were well worth the amount charged by plaintiff.
Defendant further contends that plaintiff is estopped from collecting a fee from it. Defendant’s argument is as follows : Waters and Taylor purchased the stock on the basis of defendant’s financial statement of August 31, 1959 which showed no indebtedness for attorney’s fees; that had they known the corporation was indebted for $1,000.00 attorney’s fees they would not have bought the stock at the price paid; that plaintiff owed Waters and Taylor a duty to disclose the fact that he was expecting a fee from the corporation; that plaintiff did not disclose this fact to them; therefore plaintiff is estopped from collecting the fee from defendant.
We find no merit in this contention. Even if the record supported defendant’s factual conclusions plaintiff would not thereby be estopped from collecting from defendant. Plaintiff is not trying to collect from Waters and Taylor but from defendant. Defendant owes the fee regardless of whether Waters and Taylor bought or refused to buy the stock.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.